**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ACOMA PUEBLO, et al.,

        Plaintiffs,

vs.                                      No. CIV 99-1049M/WWD

THE AMERICAN TOBACCO
COMPANY, et al.,

        Defendants.

### MEMORANDUM OPINION AND ORDER

      This case comes up on a Motion to Remand to state court. Plaintiffs are several Indian Nations, Pueblos and Bands requesting declaratory and injunctive relief and money damages against eight tobacco companies and four corporations involved in tobacco research, marketing and public relations. Plaintiffs, alleging Defendants are manufacturing and marketing "unreasonably dangerous products," seek recovery of funds spent by tribal governments and the Indian Health Service for tobacco-related health costs. Defendants contend that the monies Plaintiffs seek to recover are exclusively federal and distributed solely pursuant to federal statutes, and thus, that all of Plaintiffs' claims are dependent on an interpretation of federal law.

      I have reviewed all that pertains to the Motion to Remand and conclude it must be denied.

<u>Plaintiffs' Claims</u>

      In a 112-page Complaint for Damages, Plaintiffs list ten causes of action, all of which, according to Plaintiffs, arise exclusively from New Mexico state law.

      (1) Plaintiffs' first allege fraud, stating that "with the intent to deceive," "Defendants have made false representations regarding the serious adverse health effects of cigarettes and the

addictive properties of cigarettes and smokeless tobacco."

(2) Plaintiffs also allege a "breach of assumed duty." Plaintiffs accuse Defendants of engaging in an "elaborate disinformation campaign" about the health risks of smoking cigarettes. According to Plaintiffs, while Defendants publicly represented they would "provide complete and authenticated information about cigarette smoking and health," Defendants obscured the "overwhelming and conclusive evidence that smoking causes lung cancer, heart disease and a host of other health problems."

(3) Plaintiffs' third cause of action sounds in products liability. Plaintiffs allege Defendants "manufactured, distributed and sold" tobacco products which were "defective and unreasonably dangerous," proximately causing "serious and severe health problems" in consumers.

(4) Plaintiffs' fourth cause alleges intentional misrepresentation. Plaintiffs state Defendants (a) promised scientific information about tobacco products, but misrepresented or prohibited dissemination of their findings; (b) "misrepresented the addictive nature of nicotine and the adverse health consequences of smoking;" (c) "misrepresented that they do not target or encourage children to use their tobacco products," but to the contrary, "have caused their products to be sold to children."

(5) Plaintiffs also allege negligent misrepresentation. Plaintiffs claim Defendants negligently misrepresented research efforts and the health consequences of tobacco product use.

(6) Plaintiffs' sixth cause of action alleges negligence. Plaintiffs contend Defendants breached a "duty to exercise reasonable care in the manufacture, sale and/or distribution of their cigarettes and/or smokeless tobacco products," as well as a duty "to warn of the addictive nature of nicotine and the harmful nature of their products."

(7) Plaintiffs' seventh cause of action alleges a civil conspiracy to restrain and suppress research on the harmful effects of smoking, to restrain and suppress dissemination of truthful information on the harmful effects of smoking and to restrain and suppress development, production and marketing of a safer cigarette.

(8) Plaintiff's eighth cause claims that "Defendants have realized significant profits from the manufacture, distribution and sale of cigarettes and other tobacco products on tribal lands and to tribal members," but have not contributed to the "substantial sums of money" required for "hospitals, health care providers and individuals for the treatment of tobacco-and tobacco product-related illnesses," and Plaintiffs allege Defendants' unjust enrichment.

(9) In addition, Plaintiffs allege violations of the New Mexico Unfair Practices Act, 1978 NMSA Section 57-12-2 *et seq.,* which (a) proscribes "any false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale . . . of goods or services," and (b) bans "unconscionable trade practices," such as taking advantage "of the lack of knowledge, ability experience or capacity of a person to a grossly unfair degree."

(10) Plaintiffs' tenth cause of action alleges a prima facie tort. Plaintiffs state that, without justification and understanding they would injure the Plaintiffs, Defendants "did knowingly and intentionally" perform or cause all of the conduct complained of in the Complaint.

Plaintiffs contend that as a result of Defendants' conduct "[Indian] Nations have been forced to expend funds provided to the Nations under the Indian Health Care Act, 25 U.S.C. sec. 1601 *et seq.*" Plaintiffs therefore seek to recover these smoking-related costs, "including but not limited to those funds provided to the Nations by the federal government under the Indian Health

Care Act and those funds provided directly by the tribal governments for such health programs as Community Health Services Representatives. . . ." Further, Plaintiffs argue that neither their claims nor the requested relief impose a need to interpret federal law. Plaintiffs contend that if a federal question is presented, it is presented only in terms of a defense which is insufficient to support removal of the case to federal court.

Defendants' Position

Where, "in essence," "the only apparent source of [a plaintiff's] rights" is federal law, the case is to be regarded as arising under the laws of the United States. Cisneros v. ABC Rail Corp., 217 F.3d 1299, 1303-1304 (10th Cir.2000). Defendants argue generally, then, that because the primary purpose of Plaintiffs' suit is recovery of federal funds, Plaintiffs' rights in the present case turn on an interpretation of federal law. More specifically, Defendants argue that whether or not Plaintiffs have a right to recover money expended by the Indian Health Service on Plaintiffs' behalf "depends on the interpretation, construction, application, and effect of . . . the Indian Health Service subrogation statute, 25 U.S.C. Section 1682, and the Medical Care Recovery Act, 42 U.S.C. Sections 2651-53." On this basis, Defendants have removed the case from state court and contend that federal question jurisdiction exists.

The burden to support federal court subject matter jurisdiction is entirely the Defendants. A case must be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. Section 1447(c). "The presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction exists." Wright, Miller and Cooper, Federal Practice and Procedure 2d, sec.3522 at 62 (1984). The party "seeking to invoke the jurisdiction of a federal court must demonstrate the case

is within the competence of that court." Id. Therefore, Defendants must soundly establish the presence of a substantial federal question. Id., sec. 3739 at 424 (1998).

Defendants find a federal question preeminent. Because Plaintiffs seek to recover federal monies, Defendants insist, no cause of action exists unless Plaintiffs establish a right and a right of action pursuant to federal law. Plaintiffs' state law claims are absolutely dependent, according to Defendants, on Plaintiffs' ability to establish a right under federal law to recover federal monies "they never spent themselves." In other words, Defendants insist Plaintiffs cannot establish the elements of any state law claim until there has been a preliminary determination that Plaintiffs state a cognizable injury entitling them to the reimbursement they seek. Defendants contend that without an interpretation of federal law favorable to Plaintiffs' position, Plaintiffs' cannot demonstrate (a) an injury *to Plaintiffs* directly resulting from the tortious acts alleged in the Complaint, and (b) *Plaintiffs'* interest in federal monies expended as a result of the alleged tortious acts. Defendants thus argue that, regardless of the way Plaintiffs characterize their claims, interpretation of federal law is an essential component of Plaintiffs' case.

Defendants identify the Medical Care Recovery Act (MCRA) and the Indian Health Care Act as setting the parameters of Plaintiffs' rights. Defendants maintain these Acts provide an inescapable statutory scheme which

> sets forth in detail how federal monies may be spent on tribal health care, who can recover those expenditures from alleged tortfeasors, and where federal monies go when recovered. While this federal statutory scheme does not create the state causes of action that may be pursued against alleged tortfeasors, it does establish the sole statutory authorization for bringing them. Defendants' Opposition to Plaintiffs' Motion to Remand, p. 6.

Defendants distinguish this case from the several decisions remanding State Attorney General lawsuits against tobacco companies to state courts. Defendants argue, first, that the State Attorneys General who have sued Defendants in the past were attempting to recover Medicaid costs actually expended by the states. Secondly, Defendants contend that the Plaintiffs in this case are suing for federal monies not expended by Plaintiffs; and third, Defendants argue that, in order to recover health care expenditures occasioned by tortious conduct, Plaintiffs must have the authority of the United States Congress. Finally, Defendants insist that "Congress has authorized only the federal government to recover federal tribal health care expenditures."

Plaintiffs misconstrue the substance of these arguments. Plaintiffs argue that their action is brought by sovereign governments and that "the Plaintiff Nations are in no sense acting as an instrumentality of the federal government, and any assertion by the Defendants to the contrary is insupportable." Yet, Defendants do not contend Plaintiffs are acting as instrumentalities or suing as beneficiaries or representatives of the federal government. Defendants contend that because Plaintiffs neither expended the funds they seek to recover nor alleged that federal monies spent on health care costs would have been made available to the Nations for other purposes, Plaintiffs assert neither an injury nor an interest to be compensated. Plaintiffs have suffered no loss.

For all of these reasons, Defendants claim Plaintiffs "cannot prove their case without resolving important federal questions concerning whether they have a cognizable interest in recovering federal monies." Rather than examining federal law, as Plaintiffs suggest, as "a backdrop to a state-law cause of action," Defendants contend interpretation of federal law stands as a threshold to be confronted before other questions of law and fact can be deemed material.

The Motion to Remand

While, in addition to the Complaint and the Motion to Remand, I have considered and referred to Defendants' position, the Notice of Removal and Defendants' Response to the Motion to Remand in an attempt to ascertain the true underpinnings of Plaintiffs' several causes of action and to decide whether federal question jurisdiction exists, I recognize that a case is properly removed from state court "only when it is disclosed on the face of the complaint, unaided by answer or by petition for removal, that it is one arising under the Constitution or laws of the United States." North Davis Bank v. First National Bank of Layton, 457 F.2d 820, 823 (10th Cir.1972). Therefore, even though I have reviewed Defendants' arguments for purposes of understanding the substance of this case and finding a true and present controversy, in the end I make the determination of subject matter jurisdiction from Plaintiffs' Complaint alone.

A. Federal Question Jurisdiction

"Where there is no diversity of citizenship between the parties, the propriety of removal turns on whether the case falls within the original 'federal question' jurisdiction of the United States district courts: 'The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.' 28 U.S.C. sec. 1331." Burda v. M.Ecker Company, 954 F.2d 434, 437-438 (7th Cir.1992).

"The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Id. at 438; Cisneros v. ABC Rail Corp., supra. The plaintiff is "master of the claim;" and a plaintiff "may prevent removal by choosing not to plead a federal claim even if one is available." Schmeling v. NORDAM, 97 F.3d

7

1336, 1339 (10th Cir.1996).

The principle that a plaintiff is generally considered the "master of his complaint," however, "is not without limitation." Burda v. M.Ecker Company, supra at 438. A plaintiff is not permitted "to cloud" the nature of his complaint by artificial or incomplete characterizations intended to avoid an inherent federal question. Cisneros v. ABC Rail Corp., supra at 1304. This is a corollary of the well-pleaded complaint rule referred to as the "artful-pleading" doctrine. Wright, Miller and Cooper, Fed. Prac. and Proc. 3d, sec.3722 at 436 (1998). "Stated in the most general terms, the doctrine provides that a plaintiff cannot frustrate a defendant's right of removal by carefully pleading the case without reference to any federal law." Id. "A plaintiff may not frame his action under state law and omit federal questions that are essential to recovery." Burda v. M.Ecker Company, supra. "A plaintiff also may not artfully omit facts that indicate federal jurisdiction." Id. at fn3.

"As it has been developed by the federal courts, the artful-pleading doctrine appears to be applicable to three distinct classes of cases." Fed. Prac. and Proc. 3d, supra. The first of these involves "a cause of action under state law that has been judicially declared completely preempted by federal law. . . . " Id. at 437. The second class of cases "seem to involve aspects of federalism and claim preclusion. Id. at 438. The third class of cases "involves attempts by plaintiffs to mask, through artful pleading, a federal question that not only is intrinsic to the plaintiff's cause of action, but because of its centrality also constitutes adequate grounds for removal." Id. at 444; Burda v. M.Ecker Company, supra at 438.

Contrary to what Plaintiffs argue in the Motion to Remand, it appears this third grouping is "a category of artful pleading that is conceptually distinct from the complete-preemption

doctrine." Id. at 446; Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804 (1986). In these cases, even though a plaintiff has pled state causes of action exclusively, removal is permitted on the ground the state causes of action "require a determination of the meaning or application of federal law." Fed. Prac. and Proc.3d, supra at 448. "The rationale of these cases is that if the plaintiff's claims had been *well* pleaded, the federal question that purportedly creates subject matter jurisdiction necessarily would have appeared on the face of the complaint." Id. at 446.

In order to ascertain whether a complaint has been "artfully" pled and a federal question obscured, the complaint is viewed in its entirety. Cisneros v. ABC Rail Corp., supra at 1303. If claims for relief are seen as ultimately founded on federal law, the case presents a federal question and Section 1331 confers subject matter jurisdiction. Id. Because generally Section 1441(a) "embraces the same class of cases as is covered by Section 1331, establishing Section 1331 jurisdiction is generally sufficient to support removal." Fed. Prac. and Proc.3d, supra, sec. 3722 at 384-385. It makes no difference that the complaint does not directly allege "an imminent" federal claim. Cisneros v. ABC Rail Corp., supra at 1304. The source of a plaintiff's right to recover determines; if Plaintiffs' claims implicate interests which are "uniquely federal," federal question jurisdiction exists. In re Tobacco/Governmental Health Care Costs Litigation, 100 F. Supp.2d 31, 37 (D.C. Cir.2000).

"The most difficult single problem in determining whether federal question jurisdiction exists is deciding when the relation of federal law to a case is such that the action may be said to be one 'arising under' that law." Fed. Prac. and Proc. 2d, supra, sec.3562 at 18. "[F]or federal question jurisdiction to exist, the federal law must be a direct element in the plaintiff's claim and .

9

. . it is not enough that it comes in remotely or indirectly." Id. at 32.

There are some "well defined principles" to be applied as tests. North Davis Bank v. First National Bank of Layton, supra at 820. First, the right or immunity created by the Constitution or laws of the United States must constitute an essential element of the plaintiff's cause of action. State of Oklahoma ex rel. Wilson v. Blankenship, 447 F.2d 687, 690 (10th Cir.1971), *cert. denied* 405 U.S. 918 (1972). "The case must be directly concerned with the construction of federal law and a determination of rights thereunder." Id. at 691. Second, "[t]he right must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." Id. at 690; North Davis Bank v. First National Bank, supra at 821. Third, the case must present "a genuine and present controversy, not merely a possible or conjectural one. . . ." Id. Finally, "the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." Id. at 823;  Oklahoma v. Blankenship, supra.

This case meets all of the Blankenship tests. It is directly concerned with construction of the Indian Health Care Act and whether, in view of the Act's provisions, Plaintiffs have any claim to make. Plaintiffs' right to recover from Defendants for any reason whatsoever is supported under one construction of the Act and defeated by another. A genuine and present controversy is not disputed; and both the controversy and the impact of federal law upon the controversy are disclosed on the face of the complaint. Plaintiffs pleas for comity, federalism and abstention are misplaced. None of these doctrines are applicable in this context.

### B. The Nature of the Injury

Finding the source of the Plaintiffs' right and determining whether Plaintiffs' claims

implicate federal interests or turn on federal law initially requires isolation of the interest allegedly harmed and capable of compensation. This interest is most readily defined by reference to the alleged injury. There must always be a real and tangible injury. <u>Assoc. of Data Processing Service Organizations, Inc. v. Camp</u>, 397 U.S.150,152 (1970) "A federal court's jurisdiction . . . can be invoked only when the plaintiff . . . has suffered 'some threatened or actual injury resulting from the putatively illegal action. . . .'" <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975), quoting <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 617 (1973). A plaintiff must "allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." <u>Warth v. Seldin</u>, <u>supra</u> at 518.

Plaintiffs in this case allege economic harm. Plaintiffs state their injury as a long-standing diversion of gross expenditures for tobacco-related health care. Plaintiffs' allegations in this regard are seemingly identical to the injuries alleged in the pending case of <u>United States v. Philip Morris, Inc.</u>, 116 F.Supp.2d 131 (D.C. Cir.2000). In the latter, the United States, the same as Plaintiffs here, claims that, while hiding the harmful and addictive properties of their tobacco products, Defendants engaged in a "decades-long conspiracy" to increase the sales and use of tobacco products. <u>Id</u>. at 136-138. The United States alleges that this conspiracy, as well as other of Defendants' tortious conduct, "has compelled numerous entities, including the government, to expend immense resources to treat, alleviate and minimize the resulting disease and devastation." <u>Id</u>. The United States and Plaintiffs thus claim the same injury; and the reimbursement of federal funds requested by the United States includes the funds Plaintiffs seek to recover in this case. Whether Plaintiffs here or the United States in the D.C. case, or both, are proper parties to invoke the exercise of judicial remedial powers is at issue. At this point, at least, aside from the fact that

11

Plaintiffs in this case allege their own economic harm, Plaintiffs and the United States agree that the costs of Indian health care have been paid by the United States government by reason of the Indian Health Care Act and related heath care provisions, including the Social Security Act.

"The question whether there is an injury quickly becomes blended with the question whether to recognize the asserted interest that has in fact been impaired." Fed. Prac. and Proc.2d, supra, sec.3531.4 at 419. Again, this interest must be the Plaintiffs' own. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 474 (1982); Flast v. Cohen, 392 U.S. 83 (1968). A plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties." Warth v. Seldin, supra at 499.

Plaintiffs' Complaint describes the interests harmed or jeopardized by Defendants' allegedly tortious acts as the Indian Nations' fiscal integrity and their ability to protect general health and welfare. This is also the same or very similar to the case pending in the District of Columbia, United States v. Philip Morris, where, contending that essentially the same Defendants named in this case "have made numerous misstatements," have concealed the true nature of their knowledge and research about the addictive properties of cigarettes, have obstructed serious research efforts by others, and have targeted cigarette sales to children," the United States seeks a fiscal recovery--reimbursement of billions of dollars spent in the treatment of injuries and disease purportedly resulting from use of Defendants' products. Id. at 136-138.

Plaintiffs themselves refer to alleged expenditures for tobacco-related health care costs as federal monies and identify the statute authorizing the expenditures as the Indian Health Care Act. While this Act funds a vast array of medical treatment, planning, research, health care delivery

12

systems and infrastructure both for Plaintiffs and for individual members of Indian Nations, it does so exclusively by Congressional appropriations and federal monies passed through the Secretary of the Interior. 25 U.S.C. sec.1601 *et seq.* The Indian Health Service cannot charge any Indian for health care, even if the individual demonstrates "the economic means to pay." Id. at sec.1681. If an Indian tribe or tribal organization "provides health services under a contract entered into with the [Indian Health] Service under the Indian Self-Determina-tion Act," the Secretary is to provide for payment of federal funds to the Indian tribe or tribal organization. Id. at sec.1662(b)(1) and (2). In the event any monies spent on Indian health care are recoverable, the Act expressly requires proceeds received be credited to federally-controlled Indian health care funds. Id. at sec.1682. It does not appear that Indian Nations have any right beyond advice and comment to influence the level or direction of health care spending either on Indian reservations or on behalf of Indians living in urban areas. The Act provides the purposes for which money may be spent, requires regular reports to Congress, the Secretary and the Comptroller General of the United States (but not Indian Nations) and includes every indication of a comprehensive health care system wholly controlled and funded by the United States government.

     The case Plaintiffs' seek to litigate is therefore not at all like cases where a state seeks to recover state monies appropriated, controlled and expended by the state's legislative and executive branches. Similarly, I see no parallel between this case and those to which Plaintiffs equate it where third parties sue for reimbursement of Medicaid benefits in state court actions to collect past due child support from an absent father. Once more, a state plaintiff seeks to recover monies controlled and expended by the state which is seeking reimbursement, and monies which, if available, would have been subject to allocation by the state to other uses. Plaintiffs here, on the

13

other hand, seek to recover funds spent by the federal government which, if not spent on tobacco-related health care, would not necessarily have been allocated for other health care needs and would not have been available for spending at Plaintiffs' discretion. Thus, the present case includes issues completely apart from tobacco and other reimbursement cases pending or decided in state courts.

The present case not only is more complex than the state cases to which Plaintiffs compare it, it also depends on establishing more than a common law tort. In this case, unlike most cases resting on a state law tort claim, the fact of an injury is not readily demonstrable. In this case an injury, a central element of every one of Plaintiffs' state law causes of action, cannot be established without an interpretation of federal law. First, whether Plaintiffs can establish a fiscal investment in Indian health and health care delivery systems capable of being harmed presents an issue preliminary to all others. Where expenditures allegedly caused by tortious conduct were undertaken by the United States government and were not at any time subject to Plaintiffs' claims or control, the question whether Plaintiffs can have suffered an economic injury demands an immediate answer on which all else depends. Further, whether Indian Nations hold authority to seek a reimbursement of monies spent on their behalf, but neither appropriated nor controlled by their governments must also be decided before Plaintiffs' case can proceed. These issues require reference to federal law. Without an examination of the federal scheme providing Indian health care and an interpretation of federal law favorable to Plaintiffs' position, it cannot be said that Plaintiffs' fiscal integrity or the general health and welfare of Plaintiffs' people depends on a reimbursement of funds which, other than incidentally, were never subject to Plaintiffs' control and did not at any point diminish the Plaintiffs' treasuries.

Regardless of how Plaintiffs characterize their several claims, then, necessary threshold inquiries present a federal question. No matter how flagrant the violation "and no matter how direct and harmful its impact," unless an interpretation of federal law establishes a compensable interest and allows a remedy, neither interest nor remedy exist. <u>Merrill Lynch, Pierce, Fenner & Smith v. Curran</u>, 456 U.S. 353, 388 (1982). As the Supreme Court has noted, "a case may arise under federal law 'where the vindication of a right under state law necessarily turned on some construction of federal law.'" <u>Merrell Dow Pharmaceuticals, Inc. v. Thompson</u>, 478 U.S. 804, 808 (1986), quoting <u>Franchise Tax Board v. Construction Laborers Vacation Trust</u>, 463 U.S.1, 9 (1983). Where Congress has created a substantive design for the expenditure of funds, federal courts must refer to the statutory scheme to determine the basis and scope of recoupment; courts cannot provide remedies outside the statutory scheme, even when these are invoked pursuant to traditional principles of common law. <u>Cort v. Ash</u>, 422 U.S. 66 (1975). The federal statutory scheme which permits the expenditures in the first place, and not traditional state law remedies, controls when and how funds may be reclaimed, as well as who has standing to reclaim them.

In this case, construction of the Indian Health Care Act and statutes intrinsically related will determine whether Plaintiffs have an injury-in-fact, an interest to be vindicated and capable of compensation and a right to relief. Only after these matters are established will Plaintiffs' allegations of fraud, negligence, negligent misrepresentation and other tortious acts be material. The Indian Health Care Act and related law is pertinent not as a defense, but as the only means of deciding whether Plaintiffs stand in a position to have been harmed, and if harmed, whether they may be compensated.

NOW, THEREFORE, IT IS ORDERED that Plaintiffs' Motion to Remand is denied.

_____
SENIOR UNITED STATES JUDGE